Maurice Oscar BYRD, Appellant,

v.

Paul DELO, Superintendent, State Correctional Facility at Potosi, and Attorney General of the State of Missouri, Appellees.

No. 90–1491.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1990.

Decided Oct. 19, 1990.

Rehearing Granted Oct. 26, 1990.

Before McMILLIAN, ARNOLD and BOWMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Maurice Oscar Byrd, a Missouri death-row inmate, appeals an order of the United States District Court [1] for the Eastern District of Missouri denying his second petition for a writ of habeas corpus under 28 U.S.C. § 2254. *Byrd v. Delo*, 733 F.Supp. 1334 (E.D.Mo.1990). In the alternative, Byrd requests that his stay of execution be continued. For the reasons discussed below, we affirm the order of the district court and dissolve the stay of execution.[2]

## I. HABEAS CORPUS

This is Byrd's second habeas petition. Byrd's claims fall into two broad categories: three claims which were considered and rejected by this court in Byrd's first action ("repetitive claims") and six claims which were not raised in Byrd's first petition ("new claims").

## A. REPETITIVE CLAIMS

■ The court may reconsider habeas claims previously denied on the merits if the "ends of justice" so require. *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) (*Sanders*). For instance, reconsideration is appropriate if the petitioner has shown "change in the law or some other justification for having failed to raise a crucial point or argument in the prior application," *id.* at 17, 83 S.Ct. at 1078, *quoted in Williams v. Lockhart*, 862 F.2d 155, 158 (8th Cir.1988), or if there are "new facts or legal developments warranting relitigation of the claim." *Williams v. Lockhart*, 862 F.2d at 158.

In addition, at least one panel of this Circuit has held that in order to relitigate repetitive claims, a petitioner must also make "a colorable showing of factual inno-

Burton H. Shostak, D.J. Kerns, Theodore A. Zimmermann, St. Louis, Mo., for appellant.

Stephen Hawke, Jefferson City, Mo., for appellees.

1. The Honorable John F. Nangle, Chief Judge, United States District Court for the Eastern District of Missouri. Judge Nangle took senior status in May 1990.

2. The underlying facts of this case are set forth in this court's opinion denying Byrd's first habe- as corpus petition. *See Byrd v. Armontrout*, 880 F.2d 1 (8th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). Byrd was convicted of murdering four people at a shopping center in St. Louis County, Missouri, and was sentenced to death.

cence." *Williams v. Armontrout*, 855 F.2d 578, 580 (8th Cir.1988), *quoting Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986) (plurality); *see also Mercer v. Armontrout*, 864 F.2d 1429, 1434 (8th Cir.1988) (dictum). *But cf. Wilson v. Lockhart*, 892 F.2d 754, 756 (8th Cir.1990); *Williams v. Lockhart*, 862 F.2d at 158 (cases declining either to adopt or to reject "factual innocence" test). A requirement of "factual innocence" supplements rather than supplants the "new factual/legal issues" development. *See Williams v. Lockhart*, 862 F.2d at 157–58 ("factual innocence" requirement imposes "additional burden" on petitioners).

On appeal, Byrd has raised repetitive claims of ineffective assistance of counsel ("Ground E" in his habeas petition), racially biased jury selection ("Ground F") and denial of the right to offer evidence of mitigating circumstances ("Ground H"). Each of these arguments will be addressed in turn.

1. *Ground E—Ineffective Assistance of Counsel*

 Ground E of Byrd's petition alleges that his trial counsel erroneously and unreasonably called Oscar Ford to testify on Byrd's behalf. Shortly after the murder, Ford stated that he had seen three black men, one of whom resembled a Mr. Kirksey, leave the location of the murders (a shopping center) in a yellow car. Before the trial, Ford recanted his earlier statements and stated that he had in fact seen Byrd at the shopping center. At trial, Ford again testified that he had seen Byrd at the time and place of the murders.

In our review of Byrd's first petition, we held that counsel had "a reasonable basis for the decision to call Oscar Ford." *Byrd v. Armontrout*, 880 F.2d 1 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). We held that counsel sought to introduce Byrd's original statement to the police implicating Kirksey in order to corroborate the testimony of Faraby Lombardo, who had testified:

> that she had seen three black men in a yellow car in the neighborhood around

8:10 that morning. Such testimony would clearly be exculpatory, since the state's own case had included the testimony of a woman with whom Byrd worked that Byrd was already at work around 7:50 that morning.

*Id.* at 5. Thus, we concluded, it seemed reasonable "that counsel would decide to use Ford's testimony to establish the 'yellow car' defense." *Id.*

In the instant petition, Byrd argues that an intervening change in the law requires reconsideration of Ground E. In *Harris v. Reed*, 894 F.2d 871 (7th Cir.1990) (*Harris*), the district court found that the failure of the petitioner's trial attorney to put on any evidence in his client's defense did not constitute ineffective assistance of counsel, because of the weakness of the petitioner's evidence. The Seventh Circuit found that trial counsel "did not offer the strategic justifications provided by the district court," *id.* at 878, and accordingly reversed because "[j]ust as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer." *Id.* In sum, *Harris* stands for the proposition that courts may not deny claims of ineffective assistance of counsel based on justifications created by the court rather than by counsel.

Byrd argues that *Harris* requires reconsideration of his claim because this court manufactured a "yellow car" defense which counsel did not offer or intend to offer. We disagree. The record shows that trial counsel said in his opening statement that "we'll introduce testimony from Mr. Ford about what his original description was. That he saw these individuals [none of whom was Byrd] leave in a yellow car." (Trial Transcript at 713.) In addition, trial counsel asked Ford about the "yellow car" theory at trial (Trial Transcript at 738) and discussed the yellow car in his closing statement (Trial Transcript at 941–42).

Furthermore, counsel's testimony at the state post-conviction relief hearing ("the

27.26 hearing")[3] also addresses the "yellow car" defense. Counsel testified that he called Ford to the stand to corroborate Lombardo's testimony that on the morning of the murders:

> she saw an automobile fitting the description of the car Mr. Ford saw pull up on her street and a black man exited the car and there were two other individuals in the car, and that the black man placed a large bag in the trunk of a large car and re-entered the car and left again.

Brief of Appellant at 32. Counsel added that "I was assuming Mr. Ford would say that he picked out Mr. Kirksey, and felt Faraby Anysia Lombardo would say that was the same individual she saw on her street." *Id.* Although counsel did not mention a yellow car in this portion of his testimony, the passages cited clearly restate the "yellow car" theory.

On the other hand, Byrd relies on the following exchange from the Rule 27.26 hearing:

> Q: But at the point in time Oscar Ford was on the stand, the State had already suggested to the Court that, in fact, the yellow Ford had nothing to do with the crime, is that correct, another car was possibly used?
> A: I don't recall, *but I don't think anything really pointed to the yellow Ford.*
> Q: Yet, as far as his testimony, he saw three men near a yellow Ford?
> A: *I think another car, a green Plymouth, another vehicle.*

Brief of Appellant at 33 (emphasis in original). Byrd interprets this passage to mean that counsel never sought to establish the "yellow car" theory. In light of the testimony cited above, other interpretations are equally plausible. For instance, Aylward might have questioned the truth of the "yellow car" theory after the trial, or might have merely been describing the prosecution's theory. Neither possibility, however, forecloses a finding that the "yellow car" theory was used at the time of trial.

In sum, we reiterate our view that counsel sought to use the "yellow car" defense at trial and sought to use Ford's initial identification to corroborate Lombardo's testimony. Thus, we did not improperly "construct strategic defenses which counsel does not offer," *Harris,* 894 F.2d at 878, and Byrd cannot point to any new legal developments supporting reconsideration of Ground E.[4]

### 2. *Ground F—Racially Biased Jury Selection*

■ Byrd was convicted by a all-white jury and has relied on various legal theories to support his claim that the prosecution unconstitutionally kept blacks off the jury.

In his Rule 27.26 petition, Byrd relied on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (*Batson*), which prohibited prosecutors from using peremptory strikes to create an all-white jury. *Batson* overruled *Swain v. Alabama,* 380 U.S. 202, 223–24, 85 S.Ct. 824, 837–38, 13 L.Ed.2d 759 (1965) (*Swain*), which allowed prosecutors to use peremptory strikes to create an all-white jury in individual cases, as long as they did not systematically keep blacks off juries. The state courts rejected this claim, based on *Allen v. Hardy,* 478

---

**3.** At the time of the hearing in 1985, Mo.Sup. Ct.R. 27.26 governed petitions for post-conviction relief.

**4.** Byrd also raises two other arguments. First, Byrd argues that he is factually innocent. As noted above, to gain reconsideration of a repetitive claim a petitioner must establish both a colorable showing of factual innocence and new facts or legal developments warranting relitigation of his claim. *Williams v. Lockhart,* 862 F.2d 155, 158 (8th Cir.1988). As the latter requirement has not been met, we need not decide whether the first requirement has been satisfied as well. For the same reason, we need not address Byrd's claim that his factual innocence requires reconsideration of Grounds E and H.

Second, Byrd argues that none of his claims are barred by *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (*Teague*) (holding that "new rules of law" cannot be applied retroactively to habeas petitions). Neither the district court nor the state argues that *Teague* applied to any claims other than Grounds A, G, and H, and the latter claims are barred on other grounds. Accordingly, we decline to decide whether *Teague* governs any of Byrd's claims.

U.S. 255, 258, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986) (*Allen*) (holding that *Swain* test still applies to pre-*Batson* trials, because (1) decisions such as *Batson*, which overrule precedent, are generally not applied retroactively, (2) *Batson* rule, unlike other rules which have been applied retroactively, serves ends other than integrity of jury factfinding, (3) prosecutors and judges have relied on *Swain*, and (4) retroactive application of *Batson* would seriously disrupt the administration of justice), and held that the *Swain* "systematic exclusion" test governed Byrd's claim. *See Byrd v. State*, 723 S.W.2d 37, 42 (Mo.App.) (applying *Allen*), *cert. denied*, 484 U.S. 872, 108 S.Ct. 203, 98 L.Ed.2d 155 (1987).

In his first petition, Byrd requested discovery to ascertain whether blacks had been systematically excluded from St. Louis County juries. The district court denied Byrd's discovery request, and we held on appeal that the district court "properly denied Byrd's discovery request ... [because] Byrd has offered no cause for his failure to present evidence in support of his *Swain* claim to the state courts, as he must to overcome the procedural bar created by that failure." *Byrd v. Armontrout*, 880 F.2d at 7; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (where habeas petitioner has failed to raise his claim in state courts, he has committed "procedural default" and must show cause for default and prejudice from constitutional violation to avoid procedural bar). We then denied Byrd's *Swain* claim on the merits, because the evidence was "insufficient to warrant relief under *Swain.*" *Byrd v. Armontrout*, 880 F.2d at 7.

In his second petition, Byrd argues that he had good cause for failing to raise his *Swain* claim in state court, because *Allen* had not been decided until one day before his Rule 27.26 brief was filed. In our decision denying Byrd's first petition, we considered and rejected this argument. *See Byrd v. Armontrout*, 880 F.2d at 7 n. 6.

Byrd also claims that the procedural default doctrine is inapplicable because the Missouri courts in fact addressed his *Swain* challenge on the merits. The district court held that reconsideration of this claim was inappropriate because "[p]etitioner alleges no new factual evidence. He does not allude to some intervening change in the law. He simply disagrees with this Court's determination that a *Swain* claim was procedurally barred." *Byrd*, 733 F.Supp. at 1338 (E.D.Mo.1990). As petitioner has raised no new arguments, we agree. *See Williams v. Lockhart*, 862 F.2d at 158 (new "facts or legal developments" must be raised).

### 3. Mitigating Evidence of Good Character—Ground H

■ At trial, counsel informed the state trial court that he planned to offer the testimony of a Mr. Coble that Byrd had been nominated for a good citizenship award in connection with assistance he had given the police in investigating a burglary. The court ruled that if the defense called Coble, the state would be allowed to cross-examine him about his knowledge of evidence of Byrd's bad character (such as Byrd's arrest records). As a result, defense counsel declined to call Coble as a witness.

In Ground H of his second petition, Byrd claimed that the trial court's ruling allowing cross-examination violated his right to present evidence of mitigating circumstances, because the ruling "left him with a 'Hobson's choice' and constructively denied him the opportunity to present all mitigating evidence." *Byrd v. Delo*, 733 F.Supp. at 1338.

We initially rejected Byrd's argument because allowing impeachment of witnesses is simply not identical to exclusion of such witnesses. *See Byrd v. Armontrout*, 880 F.2d at 11.

Byrd now argues that if the prosecutor's impeachment of a character witness concerns matters beyond the proper scope of cross-examination, the defendant's right to introduce evidence of mitigating circumstances has been unconstitutionally "chilled" if the mitigating evidence was not

introduced. Reply Brief of Appellant at 12–13 (hereinafter "Reply Brief").

As noted above, reconsideration of repetitive claims is appropriate only where the petitioner has shown the existence of newly discovered evidence, an intervening change in the law, or some other persuasive reason for his or her failure to raise new arguments earlier. Instead, Byrd has merely restated arguments which have been made and rejected by this court and which were based on well-settled law. *See Byrd v. Armontrout*, 880 F.2d at 11; *see also Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (jury must be allowed to consider mitigating circumstances). Thus, there is no reason why Byrd should be able to relitigate Ground H on the merits, and we accordingly affirm the district court's denial of that claim.

## B. NEW CLAIMS

Byrd also raised six new claims in his second habeas petition, including: (1) introduction of illegally obtained testimony ("Ground B"); (2) perjured testimony by a prosecution witness ("Ground C"); (3) failure to disclose exculpatory evidence ("Ground D"); (4) two claims alleging unconstitutional jury instructions ("Ground A" and "Ground G"); and (5) a claim that the infliction of capital punishment in this case is disproportionate ("Ground I").

When a second habeas petition raises claims not raised in the first petition, "full consideration of the merits can be avoided only if there has been an abuse of the writ." *Sanders*, 373 U.S. at 17, 83 S.Ct. at 1078. Whether a habeas claim is "abusive" is governed by the "cause and prejudice" standard governing allegations of procedural default.[5] *See Smith v. Armontrout*, 888 F.2d 530, 541 (8th Cir.1989) (abusiveness determined by "cause and prejudice" test); *see also Wainwright*, 433 U.S. at 87–91, 97 S.Ct. at 2506–09 (applying "cause and prejudice" test to procedural default).

■ An allegedly abusive claim may not be entertained unless the petitioner can show (1) cause sufficient to excuse the failure to raise the claim earlier, *Smith v. Armontrout*, 888 F.2d at 541, and (2) prejudice resulting from the alleged deprivation of constitutional rights. Such prejudice occurs if, absent the alleged violations, "the factfinder would have had a reasonable doubt regarding guilt." *Byrd v. Delo*, 733 F.Supp. at 1339; *see also Dalton v. United States*, 862 F.2d 1307, 1310 (8th Cir.1988). Even if the "cause and prejudice" test is not met, a petitioner's claim may be considered on the merits if he or she can show that newly discovered evidence would cause his or her acquittal on retrial, or that he or she is innocent. *See Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (*Murray*) ("cause and prejudice" test inapplicable where the alleged "constitutional violation has probably resulted in the conviction of one who is actually innocent."); *Mastrian v. McManus*, 554 F.2d 813, 823 (8th Cir.) (*Mastrian*), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977) (newly discovered evidence justifies habeas relief if it "would probably produce an acquittal on retrial").

Byrd initially argues that we should not consider the question of abusiveness because the state did not plead abuse of the writ before the district court. Brief of Appellant at 19, 38. *See also Sanders*, 373 U.S. at 10–11, 83 S.Ct. at 1074–75 ("the burden is on the Government to plead abuse of the writ"). We disagree. The record demonstrates that in its response to Byrd's motion for stay of execution, the only major document filed by the state in district court, the state specifically described each of Byrd's new claims as "abusive," Suggestions in Opposition to Application for Stay of Execution at 2–3, and argued that "[Byrd's] claims constitute an abuse of writ, [and] are procedurally defaulted." *Id.* at 2–3.[6] Accordingly, we will address each of Byrd's new claims below.

---

5. Accordingly, we reject the state's argument that the district court should have considered abuse of the writ and procedural default separately.

6. Furthermore, this court has suggested that district courts may raise the question of abusiveness *sua sponte*. *See Miller v. Solem*, 758 F.2d 144, 145 (8th Cir.) ("[O]nce the government has

**1044**

### 1. *Illegally Obtained Confession— Ground B*

■ At trial, O.C. Green and James Mydell testified that while they were imprisoned in Georgia, Byrd told them that he committed the crimes at issue. In Ground B of his second petition, Byrd alleges that Green and Mydell were government "plants" and that therefore their testimony should have been excluded. *See Massiah v. United States*, 377 U.S. 201, 202–03, 84 S.Ct. 1199, 1200–01, 12 L.Ed.2d 246 (1964) (where defendant made incriminating statements to fellow narcotics dealer who was cooperating with authorities, statements excluded as violation of Sixth Amendment). The district court denied this claim on the grounds that (1) Byrd has shown no cause for failing to raise this claim in his first petition, (2) he has not shown that the "actual innocence" exception applies, and (3) his substantive claim is without merit. *See Byrd v. Delo*, 733 F.Supp. at 1340–41.

On appeal, Byrd argues that the "actual innocence" exception to the abusiveness doctrine applies to this case. The district court adequately responded to this claim by stating that "even without the testimony of Green and Mydell, [Byrd's] confession to his second wife as well as significant circumstantial evidence ... provide an adequate basis for establishing [Byrd's] guilt." *Id.* at 1341. We agree and therefore hold that Byrd was not prejudiced by the admission of the testimony of Green and Mydell and that the actual innocence exception is also inapplicable.

### 2. *Perjury—Ground C*

■ At trial, O.C. Green testified that he had made no deals with prosecutors. In fact, Green had made a plea agreement with authorities in Georgia, which provided that the state would "drop pending armed robbery and murder charges against Green in return for Green's testimony with respect to charges pending against petitioner in Georgia." *Id.*

In Ground C of his second petition, Byrd argues that because Green perjured himself regarding his plea agreement with Georgia authorities, habeas relief is appropriate. The district court held that Byrd was not prejudiced by Green's perjury, because "absent the testimony of Green ... the state presented sufficient evidence of petitioner's guilt." *Id.*

We assume for the purposes of this analysis that Byrd demonstrated cause for his failure to raise Ground C in his first petition, because "the information concerning the charges dropped about O.C. Green came to counsel's attention only after the filing of his initial habeas application in 1987." Brief of Appellant at 25. We agree with the district court, however, that Byrd has not established prejudice arising out of Green's perjured testimony. Even without Green's testimony, Byrd's confessions to Mydell and his second wife, as well as significant circumstantial evidence, support the jury's verdict. For the same reason, Byrd cannot obtain relief under the "actual innocence" exception to the "cause and prejudice" rule.[7] Finally, Byrd may not obtain relief under the newly discovered evidence exception because newly discovered evidence justifies habeas relief only if it would "produce an acquittal on retrial." *Mastrian*, 554 F.2d at 823. For the reasons stated above, we hold that exclusion of Green's testimony or exposure of his perjury would not produce an acquittal on retrial.

raised the issue of abuse or it has been raised *sua sponte,* the burden shifts to the petitioner to show why he has not abused the writ."), *cert. denied,* 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 848 (1987).

7. Because Green's testimony was amply corroborated, we also find that Ground C is without substantive merit. *See United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (conviction based on perjured testimony must be set aside only if "reasonable likelihood that the false testimony could have affected judgment of the jury"); *United States ex rel. Dowd v. Lane,* 574 F.Supp. 972, 975–76 (N.D. Ill.) (although witness falsely testified that he made no deals with prosecution, conviction upheld where "testimony of several witnesses and other evidence" corroborated witness's testimony regarding petitioner's guilt)., *aff'd on other grounds,* 762 F.2d 1015 (7th Cir.1985).

### 3. Failure to Disclose Exculpatory Evidence—Ground D

■ In Ground D of his second petition, Byrd alleges that law enforcement authorities failed to disclose numerous items of exculpatory evidence, including reports suggesting that numerous persons saw a maroon Cadillac near the murder scene on the morning of the crime, a confession by another person, and the existence of numerous keys at the murder scene, none of which belonged to Byrd. In addition, Byrd notes that the police discovered numerous fingerprints at the murder scene, but did not reveal to whom they belonged. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (requiring disclosure of exculpatory evidence). The district court rejected Byrd's claim because Byrd "utterly fail[ed] to offer an explanation as to why these arguments were not raised in earlier petitions," *Byrd v. Delo,* 733 F.Supp. at 1341, and "had [the evidence] been presented at trial, this Court cannot conclude that the factfinder would have a reasonable doubt with respect to guilt." *Id.* at 1342.

On appeal, Byrd excuses his failure to raise this issue in his first petition on the grounds that "much information was not given to Byrd's habeas counsel until *after* the prior petition for habeas had progressed." Brief of Appellant at 39 (emphasis added).[8] Byrd's brief does not specify, however, which evidence was disclosed before the first petition was filed and which had been disclosed more recently.

Assuming arguendo that good cause exists for Byrd's failure to file his exculpatory evidence claim, we agree with the district court's holding that he has not carried his burden of establishing prejudice or actual innocence. *See Smith v. Armontrout,* 888 F.2d at 540 (if the state pleads abuse of writ as a defense, "the burden is on petitioner to establish that the defense is without merit"). Byrd has not made any effort to show how specific items of previously undisclosed evidence prove his innocence, or how their exclusion helped the prosecution show guilt. Thus, we simply cannot

ascertain to what extent, if any, Byrd's case was prejudiced by the alleged failure to disclose exculpatory evidence, or how the allegedly withheld evidence proves his innocence.

Accordingly, we affirm the district court's denial of Ground D.

### 4. Jury Instructions—Grounds A and G

■ In Grounds A and G of his second petition, Byrd challenges these instructions:

*Instruction 54*

In determining the punishment to be assessed under Count IV against the defendant for the murder of Judy Cazaco, you must first unanimously determine:

1. Whether the murder of Judy Cazaco was committed while the defendant was engaged in the commission of the capital murders of James Wood, Edna Ince and Carolyn Turner.
2. Whether the defendant murdered Judy Cazaco for the purpose of receiving money or anything of monetary value. You are further instructed that the burden rests upon the state to prove beyond a reasonable doubt at least one of the foregoing circumstances, and that it is an aggravating circumstance. The defendant is not required to prove or disprove anything.

Therefore, if you do not unanimously find from the evidence beyond a reasonable doubt that at least one of the foregoing circumstances exist and that it is an aggravating circumstance, you must return a verdict fixing the punishment of the defendant at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.

*Instruction 55*

If you find and believe from the evidence beyond a reasonable doubt that one or more of the circumstances submitted in Instruction Nos. 51, 52, 53, 54 exists and that at least one of them is an aggravating circumstance, it will then become

---

**8.** In addition, Byrd suggests that the police continue to withhold unspecified information.

your duty to decide whether a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death as punishment of defendant. In deciding that question you may consider all of the evidence relating to the murders of James Wood, Edna R. Ince, Carolyn Turner and Judy Cazaco.

You may also consider any of the aggravating circumstances referred to in Instruction Nos. 51, 52, 53, 54 which you found beyond a reasonable doubt.

If you do not unanimously find from the evidence beyond a reasonable doubt that a sufficient aggravating circumstance or circumstances exists to warrant the imposition of death as defendant's punishment, you must return a verdict fixing his punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.

*Instructions 56–59*

If you decide that a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death, as submitted in Instruction No. 51, it will then become your duty to determine whether a sufficient mitigating circumstance or circumstances exist which outweigh such aggravating circumstance or circumstances so found to exist. In deciding that question you may consider all of the evidence relating to the murder of James Wood.

You may also consider:

1. Whether the defendant has no significant or prior criminal activity.

2. The age of the defendant at the time of the offense.

You may also consider any circumstances which you find from the evidence in extenuation or mitigation of punishment. If you unanimously decide that a suffi-

cient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence under Count I.

*Instruction 60*

Even if you decide that a sufficient mitigating circumstance or circumstances do not exist which outweigh the aggravating circumstance or circumstances found to exist, you are not compelled to fix death as the punishment. Whether that is to be your final decision rests with you.

*Byrd v. Delo,* 733 F.Supp. at 1342–43.

a. *Instructions 56–59—Ground A*

In Ground A of his second petition, Byrd argues that Instructions 56–59 unconstitutionally "prohibited the jury from considering mitigating evidence unless such circumstances were unanimously found to exist." *Byrd v. Delo,* 733 F.Supp. at 1343. The district court rejected this claim as abusive and as without substantive merit. *Id.* at 1343–44.

On appeal, Byrd argues that the "actual innocence" exception of *Murray* requires habeas relief in this case.[9] This doctrine is applicable to sentencing if, had the jury had been properly instructed, it would not have sentenced petitioner to death. *Gilmore v. Delo,* 908 F.2d 385, 387 (8th Cir. 1990), *aff'g* No. 89–1167(C)(2), slip op. at, 1989 WL 109554 (E.D.Mo. June 20, 1989) (*Gilmore*).

Byrd concedes that in *Gilmore,* the district court held that "this very instruction" was constitutional. Brief of Appellant at 14 n. 11.[10] On appeal, the *Gilmore* court

---

9. Byrd argued before the district court that good cause existed for his failure to raise Grounds A and G earlier, because of his attorney's "simple, excusable inadvertence." *Byrd v. Delo,* 733 F.Supp. 1334, 1343 (E.D.Mo.1990). The district court correctly noted that attorney error short of ineffective assistance of counsel does not constitute "good cause," *id.,* and Byrd apparent-

ly does not contend otherwise on appeal. *See also Harper v. Nix,* 867 F.2d 455, 457 (8th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3194, 105 L.Ed.2d 702 (1989).

10. In addition, we have upheld a nearly identical instruction on other grounds. *See Smith v. Armontrout,* 888 F.2d 530, 544–46 (8th Cir.1989)

declined to reach the merits, and instead affirmed the denial of habeas relief based on the "abuse of the writ" defense. *Gilmore*, 908 F.2d at 386–87. The *Gilmore* petitioner, like Byrd, sought to bring himself within the "actual innocence" exception to the abusiveness doctrine. We rejected this argument and held that the petitioner would have been sentenced to death even if the jury had been properly instructed. The court so held for two reasons. First, the jury had found several aggravating circumstances, including two other murders, numerous prior criminal convictions, and the fact that the murder was for the purposes of receiving money and preventing the victim from testifying. *Id.* at 387. Similarly, multiple aggravating circumstances existed in this case. *See State v. Byrd*, 676 S.W.2d 494, 498, 507 (Mo.1984) (banc) (murders committed in commission of other capital murders and for purpose of receiving money, and Byrd "commended the practice of either killing or incapacitating robbery victims ... to prevent them from testifying"), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985).

Second, the evidence of mitigating circumstances in *Gilmore* was quite weak. The only mitigating evidence consisted of one witness who testified that the petitioner had been abused as a child, another who testified that the petitioner was "borderline mentally retarded," and the petitioner's own testimony that at the time of the murder he was an alcoholic and a drug abuser. *Gilmore*, 908 F.2d at 387–88. Byrd's trial counsel presented four witnesses. One of the witnesses was Byrd's mother, who testified that Byrd's father died when he was very young and that Byrd was a Korean War veteran. The other three witnesses cited in Byrd's brief, James Gilsinan, Steven Puro, and Father Francis Cleary, criticized the death penalty generally without discussing Byrd himself. Thus, Byrd's mitigating evidence is as weak, if not weaker, than that of the petitioner in *Gilmore*.

In sum, we hold that the actual innocence exception, as it applies to the penalty phase, does not apply because Byrd would have been sentenced to death even if the jury had been instructed differently. *See Gilmore*, 908 F.2d at 387.

Accordingly, we affirm the district court's denial of Ground A.

### b. *Instructions 54–56—Ground G*

■ In Ground G of his second petition, Byrd claims that Instructions 54–56 unconstitutionally required him to prove mitigating circumstances beyond a reasonable doubt, or were at least so confusing that a reviewing court could not determine whether the jury reached its conclusion on the basis of an unconstitutional understanding. The district court rejected this claim as an abuse of the writ and on the merits. *Byrd v. Delo*, 733 F.Supp. at 1344–45.

On appeal, Byrd makes the same procedural argument which we rejected in our discussion of Ground A, *i.e.*, that the actual innocence exception should apply because Byrd would not have been sentenced to death if the jury had been properly instructed.

As noted in our discussion of Ground A, the evidence of multiple aggravating circumstances was compelling and Byrd's evidence of mitigating circumstances is weak. We therefore hold that the actual innocence exception, as it applies in the penalty phase, does not apply because Byrd would have been sentenced to death even if the jury instructions had been less confusing.

### 5. *Proportionality—Ground I*

■ In Ground I of his second petition, Byrd claims that his death sentence is disproportionate when compared with those of similar offenders. Byrd states that he did not raise this claim in his first petition because he only recently discovered evidence that the Missouri Supreme Court had based its proportionality review of his sentence on inaccurate information. Under Missouri law, the Missouri Supreme Court's staff is required to prepare a syn-

(rejecting claim that instruction unconstitutionally shifted burden of proving that mitigating circumstances outweighes aggravating circum- stances, but declining to address on merits claim that instruction required unanimous finding of mitigating circumstances).

opsis of "all cases in which a sentence of death or life without parole was imposed after May 26, 1977." Brief of Appellant at 19. Byrd claims that the Missouri Supreme Court's records are incomplete and inaccurate, and that the court therefore "could not have engaged in the required proportionality review." *Id.* at 21.

Where, as here, the petitioner's claim is based on newly discovered evidence, the "cause and prejudice" test is inapplicable. Instead, the court must determine whether the newly discovered evidence would have resulted in an acquittal or a lesser sentence on retrial. *See Mastrian*, 554 F.2d at 823. As noted above, Byrd's crimes and the evidence at trial were quite similar to those in *Gilmore* and other cases where the death penalty has been imposed. *Cf. State v. Gilmore*, 661 S.W.2d 519, 525 (Mo.1983) (banc) (citing similar cases), *cert. denied*, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1983). The court therefore finds that a more comprehensive database would not have changed the Missouri Supreme Court's holding that his death sentence was "not disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *State v. Byrd*, 676 S.W.2d at 507.[11]

## II. STAY

In the alternative, Byrd argues that because he has not yet exhausted his state remedies by filing a state habeas petition under Missouri Supreme Court Rule 91 ("Rule 91 petition"), the court should continue its stay of execution pending the disposition of such a petition.

■ As Byrd notes, a stay of execution is generally appropriate where a petitioner

has failed to exhaust state remedies. *See, e.g., Shaw v. Martin*, 613 F.2d 487 (4th Cir.1980); *Fletcher v. Armontrout*, 733 F.Supp. 1348 (W.D.Mo.1990) (granting stay, and rejecting view that abolition of Rule 27.26 repealed state habeas remedy). On the other hand, Rule 27.26 and Rule 91 both incorporate relevant constitutional law. Thus, a stay in this case might well be futile.[12]

■ As the Missouri courts enacted both Rule 27.26 and Rule 91, they should decide the proper relationship between these two rules. Thus, the court must decide whether continuing the stay would make it any easier for the Missouri courts to resolve this question.

If we dissolve our stay, Byrd can still request a stay from the Missouri courts, and go on to litigate his Rule 91 claim if the stay is granted. It follows that it would be pointless for us to continue our stay, because the relationship between Rule 27.26 and Rule 91 can be addressed by the Missouri courts whether the stay is continued or dissolved. Accordingly, we will dissolve the stay of execution.

In sum, we affirm the district court's denial of Byrd's habeas petition and dissolve our stay of execution.

We are grateful to and compliment appointed counsel for their zealous and effective representation of Byrd. Their performance has been exemplary.

## ON PETITION FOR REHEARING AND STAY OF EXECUTION

The panel has granted a rehearing and the application for stay of execution. Judge Bowman dissents from that grant of rehearing by the panel. The date of execu-

---

11. For the same reason, we reject as an abuse of the writ Byrd's claim that the state's inadequate recordkeeping is itself a constitutional violation. *Cf. Kordenbrock v. Scroggy*, 680 F.Supp. 867, 898–99 (E.D.Ky.) (rejecting similar claim on merits because federal courts are "generally not required to reexamine that state's proportionality review ... [unless] the imposition of capital punishment in [petitioner's] case shocks the conscience"), *aff'd on other grounds*, 889 F.2d 69 (6th Cir.1989).

12. Byrd also suggests that his alleged failure to exhaust remedies bars dismissal based on abuse of the writ or procedural default. In fact, the purpose of the procedural default doctrine is to preclude federal court review of "contentions of federal law which were *not* resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1987) (emphasis in original). Thus, Byrd's argument on this issue is without merit.

tion set by the Missouri Supreme Court is hereby stayed until further order of this court. The petition for rehearing en banc is hereby rendered moot.

ARNOLD, Circuit Judge, with whom McMILLIAN, Circuit Judge, joins.

In denying Byrd's Rule 91 petition for habeas corpus without giving a reason, the Missouri Supreme Court has arguably removed any procedural bar, in the *Wainwright* sense, to federal habeas consideration of the merits of the grounds alleged in the petition. We do not know the ground upon which the Missouri Supreme Court decided to deny the petition. In the absence of a clear statement that this action was based on state procedural law, the merits are open on federal habeas.

Most of the grounds alleged in the petition would still not get Byrd anywhere, as the state argues, because we have either previously rejected them on the merits, or because our rejection of them was based not on procedural-bar but rather on successiveness or abuse-of-the-writ principles. Two of the grounds, however, may not fit this mold. The *Swain* ground, see paragraph 17 of the Rule 91 petition, and the *Mills* claim, see paragraph 18 of the Rule 91 petition, both appear to have been rejected by the panel as procedurally barred. See the panel's opinion, slip op. 6–8, 14–16. If the Missouri Supreme Court's form of disposition of the Rule 91 petition dissolves the procedural bar, so to speak, these claims are now open for adjudication on the merits in the federal habeas forum.

We believe the panel should carefully examine these issues. We therefore vote to grant rehearing by the panel and to stay the execution until the panel has made its decision.