Wilburn A. HENDERSON, Appellee,

v.

Willis SARGENT, Warden, Arkansas Department of Correction, Appellant.

No. 90–1550.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 26, 1990.

Decided Feb. 19, 1991.

Jack Gillean, Little Rock, Ark., for appellant.

Gerald Coleman, West Memphis, Ark., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

LAY, Chief Judge.

The State of Arkansas appeals the district court's [1] order granting a writ of habeas corpus. The petitioner, Wilburn Henderson, challenges his conviction for capital murder on the grounds that his trial counsel was ineffective in both the guilt and penalty phases of his trial. The court found that trial counsel failed to investigate and develop evidence implicating other suspects in the murder. This evidence, available to counsel at the time of trial, creates significant doubt about Henderson's guilt. The court also found that trial counsel failed to present mitigating evidence in the penalty phase of the trial that indicated Henderson had suffered from mental illness and possibly was not in complete control of his actions when he evaded police and confessed to witnessing the murder. The district court ordered the state to either retry Henderson or release him. We affirm with regard to the guilt phase claim, and therefore do not reach the penalty phase claim.

## I.

Henderson was convicted of the capital murder of Willa Dean O'Neal on February 2, 1982, and was sentenced to death.[2] His first trial was declared a mistrial when several jurors admitted they had seen the extensive media publicity about the case. At the second trial, the prosecution presented evidence showing that the victim was found shot to death behind the counter of the furniture store she owned and operated with her husband. The police estab-

---

1. The Honorable United States District Judge G. Thomas Eisele, Chief Judge for the Eastern District of Arkansas.

2. Henderson brought an unsuccessful direct appeal to the Arkansas Supreme Court challenging the sufficiency of evidence, constitutionality of the Arkansas death penalty statute, and various evidentiary rulings. *Henderson v. State,* 279 Ark. 414, 652 S.W.2d 26, *cert. denied,* 464 U.S. 1012, 104 S.Ct. 536, 78 L.Ed.2d 716 (1983). Henderson then brought a Rule 37 petition arguing that his trial counsel was ineffective in failing to 1) request a jury instruction for first-degree murder, 2) submit evidence of Henderson's impaired mental condition during the penalty phase, and 3) object to cross-examination of defense witnesses during the penalty phase. The Arkansas Supreme Court denied the Rule 37 petition. *Henderson v. State,* 281 Ark. 406, 664 S.W.2d 451 (1984). Henderson then brought his petition for a writ of habeas corpus to the district court.

lished she was murdered between 1:40 p.m., when her husband Bob O'Neal, daughter Glenda Fleetwood, and son-in-law Ricky Fleetwood last saw her, and approximately 2:00 p.m., when a mail carrier and several customers discovered the body. The cash register was found open and at least $41 was missing.

A key piece of evidence implicating Henderson was a folded sheet of yellow paper found on the floor of the furniture store.[3] The victim's daughter testified she had not seen the paper there earlier in the day. On the paper were two telephone numbers, the name of a real estate agent, and a description of a lake cabin. Police contacted the real estate agent who stated Henderson had made an appointment to discuss the lake cabin described on the sheet of paper. Henderson did not keep the appointment. This paper was the sole physical evidence connecting Henderson with the scene of the murder.

Henderson, aware he was a suspect, fled to Houston where he was arrested by Houston police. Police by then had discovered that Henderson had taken a .22 caliber pistol out of pawn a few days before the murder, and had returned it after the murder. Ballistics evidence at trial indicated O'Neal was killed by a .22 caliber pistol, but the ballistics expert could not conclusively match the bullet to Henderson's gun.

Arkansas police traveled to Houston to question Henderson, who confessed he was at the murder scene and claimed he had seen Ollie Brown kill O'Neal. Henderson later recanted the confession and stated he confessed only because he feared the police would harm him. At trial, Henderson testi-

fied that he was in Springdale, Arkansas, at 12:00 noon the day of the murder and could not possibly have driven to the murder site in Fort Smith in time to commit the murder. His alibi was corroborated by Selena Henderson, his wife at the time, who claimed to have been with him in Springdale on that day. Henderson explained that he must have dropped the yellow sheet of paper when he was shopping in the O'Neals' store a few days before the murder.

Based on this evidence the jury found Henderson guilty of the murder. At the penalty phase, Henderson's mother testified that he was a loving son, and another witness testified that he had been doing good Christian work while in jail. Defense counsel presented no other mitigating evidence. The jury sentenced him to death.

## II.

### A.

In considering Henderson's petition, the district court first considered whether Henderson had procedurally preserved his claims of ineffective assistance of counsel under *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) and *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The state concedes Henderson raised his claim of ineffectiveness of counsel with regard to the penalty phase in his Rule 37 petition.[4] Thus, the issue of procedural bar relates only to Henderson's claim of ineffectiveness of counsel during the guilt phase.

---

3. Testimony at the evidentiary hearing before the district court indicated that two sheets of paper were found, one by police on the day of the murder and one by Clarence Wilson, a store employee, the next day. [T.62] The sheet of paper found by police was traced to Henderson. It is unclear whether police ever determined the origin of the sheet of paper discovered by Clarence Wilson.

4. The federal district court described trial counsel's performance at the penalty phase as follows:

The trial record of the penalty phase of the petitioner's trial does not reflect the thought-

ful and careful preparation that the law requires. Perfunctory is the only word that I think adequately can describe it.

The Court finds and concludes that petitioner's attorney was ineffective at the penalty phase in not adequately investigating, developing and presenting evidence concerning petitioner's mental illness history at the penalty phase of the trial and in not adequately explaining and challenging those prior convictions of the petitioner which the State relied upon as aggravating circumstances.

*Henderson v. Sargent*, No. PB–C–84–151 at 458 (Mar. 5, 1990) (record of proceedings).

The district court analyzed the question whether Henderson's guilt phase claim was procedurally barred under the test we established in *Smittie v. Lockhart*, 843 F.2d 295, 296 (8th Cir.1988).[5] The court first found that Henderson did not raise his guilt phase claim before the state court. [T.459] Henderson met the exhaustion requirement, however, because there were no non-futile state remedies available to him. [T.460] Rule 37.2 of the Arkansas Rules of Criminal Procedure requires Henderson to bring any claim for collateral review of his conviction "within three (3) years of the date of commitment, unless the ground for relief would render the judgment of conviction absolutely void." The types of claims that would render a conviction void are very limited, and none are raised here. *See Smittie*, 843 F.2d at 297–98. Thus, the district court correctly found that Henderson could not bring another petition under this rule, as the petition would be time-barred.

Before moving past the exhaustion requirement to cause and prejudice, we note that the Supreme Court "generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for procedural default." *Carrier*, 477 U.S. at 489, 106 S.Ct. at 2646; *see also Leggins v. Lockhart*, 822 F.2d 764, 768 n. 5 (8th Cir.1987), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988). Because Henderson alleges as cause the ineffectiveness of counsel in a state collateral proceeding, the state conceded at oral argument that there is no forum for review of this claim in state court. Arkansas rules prohibit a rehearing or successive petition in state collateral proceedings unless the first petition was specifically dismissed without prejudice. Ark.R.Crim.P. 37.2(b), (d); *Grooms v. State*, 293 Ark. 358, 737 S.W.2d 648, 649 (1987); *Williams v. State*, 273 Ark. 315, 619 S.W.2d 628, 629 (1981). Because Henderson's Rule 37 petition was not dismissed without prejudice, we find he substantially complied with the requirement to present this claim to the state courts.

■ Having met the exhaustion requirement, Henderson must show sufficient cause for not bringing his guilt phase claim before the state court. The district court found cause in the ineffectiveness of Henderson's counsel in Henderson's state collateral challenge to his conviction brought under Rule 37 (Rule 37 counsel). [T.460] In *Carrier*, the Supreme Court held that ineffectiveness of counsel can constitute cause. 477 U.S. at 488, 497, 106 S.Ct. at 2645, 2650. Although the Supreme Court has "declined ... to essay a comprehensive catalog of the circumstances that would justify a finding of cause," *Smith v. Murray*, 477 U.S. 527, 533–34, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986), this court has determined that ineffectiveness of counsel in a state collateral proceeding can constitute cause. *See Simmons v. Lockhart*, 915 F.2d 372, 376 (8th Cir.1990); *Bliss v. Lockhart*, 891 F.2d 1335, 1339 (8th Cir.1989); *Stokes v. Armontrout*, 851 F.2d 1085, 1092 n. 8 (8th Cir.), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 823, 102 L.Ed.2d 812 (1988).[6] Ineffectiveness of appellate coun-

---

**5.** The *Smittie* court established the following analysis:

> Federal courts must conduct a four-step analysis to determine whether a petition may be considered when its claims have not been presented to a state court. First, the court must determine if the petitioner fairly presented "the federal constitutional dimensions of his federal habeas corpus claim to the state courts." If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no "currently available, non-futile state remedies," through which the petitioner can present his claim. If a state remedy does not exist, the court next determines whether the petitioner has demonstrated "adequate cause to excuse the failure to raise the claim in state court properly." If the petitioner can show sufficient cause, the final step is to determine whether he has shown "actual prejudice to his defense resulting from the state court's failure to address the merits of the claim." The petition must be dismissed unless the petitioner succeeds at each stage of the analysis.

> *Smittie*, 843 F.2d at 296 (citations omitted).

**6.** The Fourth, Seventh and Eleventh Circuits have addressed this issue. The Fourth Circuit has held that ineffectiveness of post-conviction counsel cannot constitute cause. *Coleman v. Thompson*, 895 F.2d 139, 144 (4th Cir.), *cert.*

sel is measured under the standard set out in *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).[7] *Bell v. Lockhart,* 795 F.2d 655, 657 (8th Cir.1986).

Under *Strickland,* ineffectiveness of counsel is proven when the defendant can show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064. Although a court must endeavor to avoid "the distorting effects of hindsight," *id.* at 689, 104 S.Ct. at 2065, its ultimate inquiry must be to determine "whether counsel's assistance was reasonable considering all the circumstances," *id.* at 688, 104 S.Ct. at 2065. Specifically, the defendant must show that counsel's performance fell below an "objective standard of reasonableness," *id.* at 688, 104 S.Ct. at 2064, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068.

▪ The district court found Henderson's trial counsel and Rule 37 counsel ineffective after hearing testimony that cast significant doubt about whether Henderson was rightly convicted. This testimony, which was not presented in any of Henderson's previous trials or appeals, demonstrated that at least three other persons, particularly Bob O'Neal, had motive, opportunity and ability to kill Willa Dean O'Neal.

The record demonstrated that the victim wanted a divorce from Bob O'Neal, and Mr. O'Neal was "mad" about it. [T.36] The victim told Glenda Fleetwood that Bob had been threatening her about the divorce. [T.37] He allegedly stated that if the victim divorced him "he'd make sure no other man ever had her." [T.37] Bob O'Neal had been intimately involved with one Ruby Kiser. [T.39] His wife had filed an alienation of affection suit against Ms. Kiser. [T.15] Bob O'Neal was the beneficiary of his wife's life insurance policy and took substantial property under her will. [T.20–21, 40] He had a violent temper and previously had broken Ruby Kiser's jaw. [T.215, 240–41] He was mentally unstable and ultimately was committed to a mental treatment center. [T.355–56] He owned a .22 caliber pistol identical to the gun submitted by the state as the murder weapon. [T.23] He claimed his gun was stolen sometime after the murder. *Id.*

The district court heard testimony from Glenda Fleetwood, the victim's daughter. On the day of the murder, contrary to their usual routine, O'Neal insisted that Glenda work with him rather than stay at the store with her mother. [T.43] The morning before the murder, O'Neal for the first time asked Glenda where her mother wanted to be buried. [T.41] They returned to the store around noon that day, and left at about 1:40 p.m. [T.42] As they were leaving, Bob O'Neal told Glenda and her husband to stay out in the truck while he went

*granted in part,* — U.S. ——, 111 S.Ct. 340, 112 L.Ed.2d 305 (1990). The Seventh Circuit has in dicta expressed varying views. *Compare Madyun v. Young,* 852 F.2d 1029, 1033 n. 2 (7th Cir.1988) (ineffectiveness of counsel in collateral proceeding may constitute cause) *and Morrison v. Duckworth,* 898 F.2d 1298, 1301 (7th Cir.1990) (might constitute cause) *with Buelow v. Dickey,* 847 F.2d 420, 426 (7th Cir.), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1168, 103 L.Ed.2d 227 (1988) *and Prihoda v. McCaughtry,* 910 F.2d 1379, 1386 (7th Cir.1990) (cannot constitute cause). The Eleventh Circuit held that ineffective assistance in a collateral proceeding cannot constitute cause, but that decision has been vacated and rehearing in banc has been granted. *Toles v. Jones,* 888 F.2d 95, 99–100 (11th Cir.1989) (per curiam), *vacated pending*

*rehearing in banc,* 905 F.2d 346 (1990); *see also Johnson v. Dugger,* 911 F.2d 440, 458 (11th Cir.), *vacated pending rehearing in banc,* 920 F.2d 721 (1990).

7. We recognize that Henderson's claim of ineffectiveness of post-conviction counsel may constitute cause for surmounting the procedural bar, but cannot constitute grounds for relief from his conviction because Henderson has no Sixth Amendment right to counsel in a state collateral proceeding. *See Simmons,* 915 F.2d at 376. The *Simmons* court analyzed ineffectiveness of post-conviction counsel under the *Strickland* standard, and we find use of that standard logical.

back into the store for a few minutes. *Id.* The three then left, but as soon as they reached their destination, O'Neal sent Glenda back to the store for root beer so he could take his medicine. [T.44] When she returned with soft drinks she obtained somewhere else, O'Neal insisted that she go back to the furniture store to get some electrical tape. *Id.* Glenda returned to the store and discovered her mother's body. *Id.* When Glenda returned from the murder scene with the police, O'Neal exclaimed without being told what happened: "Someone has robbed and killed my—murdered my wife!" [T.13] O'Neal himself testified before the district court that he made this statement, but never provided a satisfactory explanation. *Id.* Later, Bob O'Neal wrote to state officials, insisting Henderson was not the murderer.[8] [T.358] The district court also heard testimony concerning four other possible suspects.[9]

None of this testimony was presented by defense counsel at trial, who maintained an alibi defense that was diminished considerably by Henderson's recanted statement that he was at the scene. It is not by virtue of hindsight that the district court found trial counsel reasonably could have presented evidence implicating O'Neal in the murder. Pursuing such a theory would have been entirely consistent with Henderson's alibi defense, and the evidence against Bob O'Neal was substantial.

Counsel's decision not to investigate and pursue this evidence cannot be justified as a strategic decision.[10] This court has held that "[t]he decision to interview a potential witness is not a decision related to trial

strategy. Rather, it is a decision related to adequate preparation for trial." *Chambers v. Armontrout*, 907 F.2d 825, 828 (8th Cir.) (en banc), *cert. denied*, —— U.S. ——, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990). Reasonable performance of counsel includes an adequate investigation of the facts of the case, consideration of viable theories, and development of evidence to support those theories. Counsel has "a duty ... to investigate all witnesses who allegedly possessed knowledge concerning [the defendant's] guilt or innocence." *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990). We have stated that " '[i]t is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and degree of guilt or penalty.' " *Eldridge v. Atkins*, 665 F.2d 228, 232 (8th Cir.1981) (quoting American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function § 4.1 (Approved Draft 1971)), *cert. denied*, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982).

There is no reasonable professional judgment that would support trial counsel's failure to investigate these witnesses. Counsel admitted he did not investigate or develop evidence about any of these possible suspects. [T.153–71] Indeed, trial counsel admitted he never interviewed the family of the victim, even though he was presented with information from the police that Bob O'Neal was capable of committing the murder. [T.162] Counsel did not inter-

---

**8.** Although not discoverable by trial counsel, Bob O'Neal made one other inculpatory statement while watching the coroner testify at Henderson's trial. The coroner was testifying that the victim had been sitting at the time she was shot. Bob O'Neal turned to Mr. Hudspeth, sitting next to him, and said "No, that's not the way it was. She dove out of the chair to miss the bullet." [T.69] This statement has never been explained by the state. Rule 37 counsel could have discovered the statement.

**9.** John Hysell knew the victim and was said to be capable of murder. [T.167] Although Hysell lived in Kansas, he apparently robbed a store in Kansas and was seen in Fort Smith pawning coins two days after the murder. [T.166] Har-

ry Anderson, a man with a criminal history and known to carry guns, was seen loitering "nervously" across the street from the store on the day of the murder. [T.162–64] Ollie Brown, the man named as the murderer by Henderson in his recanted statement to police, and Ruby Kiser, the defendant in the victim's lawsuit, also were possible suspects.

**10.** *Cf. Simmons*, 915 F.2d at 377 (stating that "[a conflict of interest claim] should rarely be abandoned, and [is] not the kind of claim ... that can, in normal circumstances, reasonably be winnowed out in the process of selecting grounds counsel believes to be most promising").

view Glenda Fleetwood, Ricky Fleetwood or Bob O'Neal, even though they were among the last to see the victim alive. [T.153–71]. Counsel did not pursue any of the leads contained in the police file, which included polygraph test results, the victim's alienation of affection suit against Ruby Kiser, and memoranda discussing possible suspects. *Id.*

Given this strong evidence showing counsel's complete failure to pursue a viable defense, we find trial counsel ineffective for failing to investigate the plausible defense theory that Bob O'Neal committed the murder. We also find trial counsel ineffective for failing to assert this theory at trial. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitations on investigation." *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066. Trial counsel admittedly did not know enough about this evidence to make a reasoned decision not to use it.

We similarly find Rule 37 counsel ineffective for failing to present this theory in the state post-conviction proceeding. Once again, Rule 37 counsel could not have been exercising an informed tactical judgment in failing to present this evidence. There was everything to be gained, and nothing to lose, from presenting this evidence. In *Lawrence,* we held that a tactical decision to pursue one defense does not excuse failure to present another defense that "would bolster rather than detract from" the primary defense. 900 F.2d at 130. In *Chambers,* we held that failure to pursue the defendant's only "realistic" defense constituted ineffectiveness. 907 F.2d at 828–32. Henderson's Rule 37 counsel pursued trial counsel's failure to request a jury instruction and failure to make certain evidentiary objections, but did not offer the evidence heard by the district court that creates serious doubt about the reliability of Henderson's conviction. The state alleg-

es no strategic basis for that decision, and indeed, there is none.

Rule 37 counsel's reasonable investigation of the case would have included consideration of trial testimony and the police record. It would have included conducting interviews with the persons who testified at trial or had firsthand knowledge of the events surrounding the murder. The Supplemental Investigation Report in the Fort Smith Police File contained leads regarding Bob O'Neal, indicating he was a suspect during the investigation. Glenda Fleetwood gave a statement to the police indicating she thought Bob O'Neal was involved. [T.49] As relatives of the victim and perhaps the last people to see the victim alive, Glenda Fleetwood and Bob O'Neal were obvious persons for Rule 37 counsel to question.[11] There is no doubt that after a reasonable investigation, Rule 37 counsel should have been aware of the evidence implicating Bob O'Neal. The state has not challenged the veracity of the witnesses implicating O'Neal, nor has it suggested that presentation of this evidence would in any way detract from Henderson's case. Thus, we cannot help but conclude that Rule 37 counsel was ineffective for failing to raise this viable defense. *See Bliss,* 891 F.2d at 1338 (granting writ of habeas corpus when state failed to contradict evidence supporting finding of ineffectiveness).

Having found cause, the question of prejudice need not detain us long. The record clearly supports the district court's finding of prejudice. Had the jury been aware of all the facts surrounding the murder of Willa Dean O'Neal, it would have been presented with significant doubts about Henderson's guilt. Without the evidence presented before the district court, the jury that convicted Henderson had no reason to question the inferences the state drew from its circumstantial case. This is not a case in which the evidence against the defendant is so overwhelming that ineffectiveness of counsel might be deemed

---

**11.** Contrary to the state's argument, Glenda Fleetwood did not provide an alibi for Bob O'Neal. She placed him alone with the victim

in the furniture store at the time of the murder, yet counsel did not even attempt to interview her.

harmless. There is a substantial probability that correction of constitutional error at retrial will effect a different result.

### B.

█ Even if we could not find cause and prejudice, Henderson's claim concerning ineffective assistance of trial counsel exposes a defect at the heart of his conviction. Cause need not be shown in an "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 498, 106 S.Ct. at 2650; *Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989). This court applied the actual innocence exception when trial counsel proceeded with joint representation of co-defendants despite an obvious conflict of interest. *Bliss*, 891 F.2d at 1342. The court held that one co-defendant had a defense of duress that probably would lead to her acquittal at retrial. *Id.* The Supreme Court has acknowledged that concern for avoiding a fundamental miscarriage of justice, particularly regarding ineffective assistance claims, must outweigh the principles of comity and federalism that form the basis for the procedural bar. *Carrier*, 477 U.S. at 498, 106 S.Ct. at 2650.

In our system of justice, a fundamental miscarriage of justice occurs when a person is found guilty of a crime even though the jury had reasonable doubt about his guilt. This premise could never be more true than in a capital case. The Supreme Court, in applying the actual innocence exception, has looked to whether correction of the constitutional error at retrial probably would result in a different outcome. *See Smith*, 477 U.S. at 538, 106 S.Ct. at 2668 (considering whether constitutional error served "to pervert the jury's deliberations concerning the ultimate question"); *cf. Kuhlmann v. Wilson*, 477 U.S. 436, 454 & n. 17, 106 S.Ct. 2616, 2627 n. 17, 91 L.Ed.2d 364 (1986) (plurality opinion) (allowing successive habeas petition on grounds of "ends of justice" when review of all probative evidence on retrial would cause jury to have reasonable doubt).[12] This court has found that the actual innocence exception applies if the defendant on retrial probably would be acquitted. *Edgemon v. Lockhart*, 924 F.2d 126 (8th Cir.1990); *Byrd v. Delo*, 917 F.2d 1037, 1043 (8th Cir.1990); *Stokes*, 893 F.2d at 156. The actual innocence exception applies in this case if a jury considering the evidence presented to the district court probably would not convict Henderson of capital murder.[13]

Henderson was convicted on a circumstantial case with only a piece of paper to place him at the murder scene. His alleged motive was the robbery of $41, yet the coroner testified there was no evidence of a struggle that would require the robber to

12. The doctrinal basis for the actual innocence exception and also the "ends of justice" exception for successive habeas petitions derives at least in part from Judge Friendly's frequently cited article advancing an innocence-based system for reviewing criminal convictions. Friendly, *Is Innocence Irrelevant?: Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142 (1970); *see also Smith*, 477 U.S. at 539, 106 S.Ct. at 2668; *Kuhlmann*, 477 U.S. at 454, 106 S.Ct. at 2627. Judge Friendly described the actual innocence standard as follows:

Perhaps as good a formulation of the criterion as any is that the petitioner for collateral attack must show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial, *the trier of the facts would have entertained a reasonable doubt of his guilt.*

38 U.Chi.L.Rev. at 160 (emphasis added).

13. Although the district court did not explicitly address the actual innocence exception, its findings suggest that the court would have found that the exception applied:

How the jury would have reacted to such additional evidence we cannot state with any degree of certitude. But the Court can state that it would probably have been the source of some considerable mental perplexity. The natural response would be: "What is going on here?" Of course, the jury may have sorted it all out and come to the conclusion that whatever else was going on, and whoever else might have been involved, it nevertheless was convinced of the defendant's guilt beyond a reasonable doubt. On the other hand, that same evidence may have caused the jury to have a reasonable doubt as to the defendant's guilt and thereby have required his acquittal. [T.464–65].

kill Ms. O'Neal. In contrast, Bob O'Neal had several motives to kill his wife, had recently threatened her, owned the type of gun used in the murder, was with the victim during her last hour, made uncanny statements that indicated his involvement, and conducted himself in a bizarre and surprising manner. The total lack of effort by trial counsel to investigate and develop obvious leads implicating O'Neal precluded the development of the true facts surrounding the murder. In light of the circumstantial case against Henderson, counsel's deficient performance causes us to have serious doubts about the reliability of his conviction. On this issue the district court's findings are substantial and compelling.

Trial counsel's efforts to investigate the facts of this case were perfunctory. Counsel did not use an investigator. [T.134, 138] He knew Bob O'Neal was a violent person and was told by a Fort Smith police officer that O'Neal was capable of the murder, but counsel did not investigate him. [T.154] He knew the victim had filed an alienation of affection suit against Ruby Kiser, but counsel did not investigate her. [T.154–55] Counsel never interviewed Bob O'Neal, Glenda Fleetwood or Ricky Fleetwood, all relatives of the victim who were among the last to see her alive. [T.161] Counsel knew that several suspects had taken polygraph tests, but he did not request the results. [T.159] The hearing transcript shows that the investigation made by counsel essentially was limited to reading the police file on the case. [T.155]

We agree with the district court that trial counsel's failure to adequately investigate the facts of the murder falls below the objective standard of reasonable assistance required under the Sixth Amendment. *Eldridge*, 665 F.2d at 237. Adequate representation probably would have produced a different result. The jury that convicted Henderson knew of the circumstantial evidence implicating him, but had no reason to doubt the inferences the state drew from the facts. At retrial the jury will be confronted with substantial evidence support-

ing an alternative theory of the murder. It would be a fundamental miscarriage of justice to affirm Wilburn Henderson's conviction in a capital case, given the probability that a jury would have reasonable doubt about his guilt if he were tried with effective counsel.

Accordingly, we affirm the district court's grant of the writ of habeas corpus vacating Henderson's conviction.[14]

---

14. Given our decision to vacate Henderson's conviction on the guilt phase claim, it is unnecessary to review the district court's grant of the writ for ineffectiveness of counsel during the penalty phase.