Maurice Oscar BYRD,
Movant-Appellant,

v.

STATE of Missouri,
Defendant-Respondent.

No. 50685.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 12, 1986.

Motion For Rehearing and/or Transfer
Denied Dec. 16, 1986.

Application to Transfer Denied
Feb. 17, 1987.

Bradford Kessler, St. Louis, for movant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

KAROHL, Judge.

This is an appeal from the denial of post-conviction relief under Rule 27.26. Movant was convicted of four counts of capital murder after a jury trial and was sentenced to death on each count. The conviction was affirmed by the Missouri Supreme Court in *State v. Byrd*, 676 S.W.2d 494 (Mo. banc 1984), *cert. denied*, 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985). The facts sufficient to support the conviction are stated in the opinion on direct appeal.

The motion was heard on the basis of movant's pro-se motion. The motion alleged five grounds in support of a request for a new trial. All grounds relate to movant's claim that he was prejudiced by ineffective assistance of counsel during the trial on the criminal charges. We recognize that the motion court permitted evidence and determined issues which are broader than alleged in the motion. The points on appeal are responsive to the broader issues as tried and determined by the motion court. The Attorney General's Office, representing the state, elected to brief and present the issues on the merits. Because the underlying convictions are on charges of capital murder for which the sentences were death we will review on the merits.

▪ The facts relevant to each claim of error will be developed as needed. Our review is limited to a determination of whether the findings, conclusions and judgment of the court are clearly erroneous. Rule 27.26(j). Movant court's findings and conclusions are deemed clearly erroneous only if, after review of the entire record, we are left with the "definite and firm impression that a mistake has been made." *Abrams v. State*, 698 S.W.2d 15, 17 (Mo. App.1985).

▪ Movant's claims of ineffective assistance of counsel require proof of two related but independent issues. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Seales v. State*, 580 S.W.2d 733, 735 (Mo. banc 1979). Second, "the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different," *i.e.*, the defendant has been prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Seales*, 580 S.W.2d at 736. In *Seales*, our Supreme Court suggested that it is not at all desirable that there be one standard applied in the State Courts when adjudicating questions of effectiveness of counsel under Rule 27.26 and a different standard applied when the same prisoner appeals in a Federal Court. We therefore review this case with the belief that *Strickland* and *Seales* require movant to prove both elements. *Jackson v. State*, 672 S.W.2d 367, 368 (Mo.App.1984). On the first issue appellant must overcome a strong presumption of the attorney's competence at the trial level. We ascertain or measure the reasonableness of counsel's conduct on the facts viewed at the time of counsel's conduct, not against the yardstick of hindsight. *Strickland*, 104 S.Ct. at 2066.

▪ Movant's first claim of error contends that defendant's trial counsel was ineffective because he called Oscar Ford as defendant's witness. Ford was the only witness to give direct, eye-witness testimony that placed defendant at the scene of

the crimes. The inculpatory evidence of the state consisted of the testimony of three witnesses who placed defendant at the scene of the crime only by statements made to them on separate occasions wherein defendant admitted his participation. Movant contends that the state's evidence against appellant failed to equal an overwhelming showing conclusively establishing guilt and the decision of trial counsel to call Oscar Ford provided concrete historical facts, first-hand evidence, which enabled the jury to overcome reasonable doubt infecting all of the state's witnesses' "admissions" testimony. Movant contends this was, in effect, per se ineffective assistance of counsel under the described standard. Further, movant contends that this "strategy" was no strategy at all. Accordingly, he contends the usual rule that trial strategy in the selection of witnesses is not a foundation for finding ineffective assistance of counsel, *Franklin v. State*, 655 S.W.2d 561, 565 (Mo.App.1983), should not be applied. The attribution of strategy does not automatically preclude a finding that the acts fall within the reasonable range of professional behavior. *Riley v. Wyrick*, 712 F.2d 382, 385 (8th Cir.1983). Defendant relies on *Wiley v. Sowders*, 647 F.2d 642 (6th Cir.1981). In *Wiley*, defendant's counsel repeatedly stated to the jury that the defendant was guilty, despite his earlier plea of not guilty and without the client's consent. The court there held that such failure could not be overcome as mere error in judgment or trial strategy. The question therefore is whether there was any rational basis for calling Oscar Ford as defendant's witness.

Defendant's trial counsel was well aware of the testimony which Oscar Ford would give in identifying defendant as one of three black men who fled the scene. Defendant's counsel had the benefit of his own deposition of witness Ford. In addition Ford testified at a pre-trial motion hearing one week before trial. In both the deposition and the motion testimony he testified that he saw three men on the shopping center parking lot, one of whom was carrying a plastic bag, and that they departed in a yellow automobile. In the motion hearing now under review the trial court took judicial notice of the entire transcript of the trial and the court file. The court file contains a copy of the deposition and of the testimony at the pre-trial motion hearing.

Trial defense counsel testified as a witness for movant. He testified that he made the decision to call Oscar Ford. His opening statement for the defendant was given after the close of the state's case. He told the jury that he would introduce testimony from Mr. Ford; that Ford would testify as to what he saw on the parking lot on the morning of the crime; that he would say he there saw Maurice Byrd; that he later identified someone else as one of the three men; that he saw three Negro males leave in a yellow car. Defense counsel also said in his opening statement that defendant would call Faraby Lombardo who was twelve years old at the time of the events and fourteen years old at the time of trial. She would testify that during the day of the killings she heard a description of the events on a news report and that she saw that car not far from the West County Shopping Center.

Ford was called by the defendant. Ford was an endorsed witness by the state but was not endorsed by the defendant. He was declared an adverse witness at defendant's request. He testified that he was at the shopping center performing clean-up duties on the morning of the crimes. He saw three Negro males, one of whom had a trash bag in his hand. He saw them walk to a yellow Ford and leave in that automobile.

Faraby Lombardo was called as a witness. She testified that she lived approximately two miles north of the shopping center which was the scene of the crime. On the day of the crime she left home at around 8:05 a.m. On route to a school bus stop she saw a yellow car turn around and stop. A black man got out of the car and placed a plastic bag in the trunk of the car. The bag was a trash bag that looked pretty full. There were three people in the car

but she could not identify them. These events occurred between 8:00 and 8:12 a.m.

The significance of the testimony of witness Ford combined with witness Lombardo relates to the testimony of state's witness Lori Robinette. Lori Robinette and her brother operated a pest control business for which movant was an employee on the date of the crimes. Their offices were located in Earth City which is in northwest St. Louis County and ten miles, more or less, northwest of the scene of the crime. She testified that on the day in question she arrived at work approximately ten minutes to eight and that movant was there at that time and for at least ten minutes thereafter. If the jury accepted the testimony of Faraby Lombardo and the testimony of Lori Robinette as true then the defendant could not have been involved in the crime. He could not have been in the presence of Faraby Lombardo two miles north of the scene of the crime at the same time he was in the presence of Lori Robinette in Earth City.

Without the testimony of Oscar Ford the testimony of Faraby Lombardo had no value to the defendant. He testified he saw three Negro males one of whom had a plastic garbage bag enter and depart in a yellow Ford. Faraby Lombardo testified that she saw one of three Negro males in a yellow car move a plastic garbage bag to the trunk. Her testimony without the testimony of Oscar Ford would have been irrelevant and worthless. After Ford's testimony, her testimony constituted an alternative defense not inconsistent with other defenses.

There is no dispute that defendant's counsel knew witness Ford would be an eye-witness, identifying defendant at the scene of the crimes. However, defendant's counsel also knew witness Ford was subject to impeachment on the identification. Two days after the crime he picked out of a photo line-up three individuals as being involved in the crime. He later recanted as to one and there is evidence that one was of an individual imprisoned in the State of Michigan at all times material. At one time in his deposition he testified that he had seen the man carrying the plastic bag for five minutes. This is unlikely because he consistently testified that he only saw a profile of one of the three men. This is the man he identified at trial as movant. Ford complained that his identification of three men in the photographs was a result of harassment by police authorities. Ford was held in continuous police custody for two days. Three teams of two police officers constantly interrogated him and "strongly" suggested that he make an identification. He claims the harassment included a threat that if he did not identify someone, he would be placed in the St. Louis County Jail and word would be passed to other prisoners that he was a "snitch" which would expose him to great danger. Under those circumstances he picked three of five photographs, none of whom were movant. Later he recanted those identifications.

■ We find that a rational decision could be made by competent counsel to accept the risk of an impeachable identification of defendant in order to obtain the testimony necessary to make Faraby Lombardo's testimony meaningful as a defense for the defendant in conjunction with the testimony of state's witness Lori Robinette.

A study of the record does not clearly demonstrate this strategy was succinctly outlined by opening statement, by the interrogation of witness Ford, or by closing argument. Nor is the testimony of defense counsel before the motion court a clear articulation of this strategy. We consider only the decision to call witness Ford. We have not been asked to consider how effective the decision was implemented. The vitality of the strategy depends entirely upon the effect of the testimony of Faraby Lombardo. Throughout the trial, including closing arguments, no attack was made upon her testimony. The prosecuting attorney at trial merely suggested that it was not likely that the three individuals who were involved in the murders would have been found only two miles from the scene of the crime, in the same vehicle in

which they departed the scene, thirty to forty minutes later. The combination of like elements including the number of men, the color of car, and the garbage bag suggests that the decision to call Ford as a preliminary to the testimony to Faraby was not wholly indefensible as a matter of strategy. It constitutes a rational basis for the decision.

There is a second analysis available to explain the decision of defense counsel. After the state rested, counsel was aware that the proof of guilt rested on the testimony of three witnesses to whom defendant made statements indicating his participation in the crimes. In addition there was evidence that his earned income and assets were limited but after the crime he had a substantial amount of cash. There was no direct evidence of defendant's participation in the crime. Counsel for the defense could have chosen to offer no evidence and relied upon an attack on the sufficiency of the state's evidence to support an argument of reasonable doubt. A second alternative was to call the defendant to the stand to testify but not call Ford and Faraby. In that event, counsel was aware defendant would testify to establish an alibi consistent with the testimony of Lori Robinette that he was at work. In order to account for his cash reserve he was prepared to testify that he had saved money and that he had previously stolen a sum of money from an automobile. This would offer a second defense with some obvious weaknesses. The third alternative was to call Ford and Faraby to give the testimony which later developed. The third alternative did not foreclose either of the first two defenses. It served to add a third defense in the alternative to the first two. The third defense had the benefit of the testimony of a state's witness, the unassailable testimony of Faraby Lombardo and the testimony of Ford on simple observations of the number of men, their race, the garbage bag and the yellow automobile, the combination of which made the testimo-

ny of Faraby Lombardo highly significant. The only hazard was the knowledge that Ford would also identify defendant. However, the identification testimony of Ford could be mitigated or impeached. Ford had previously and falsely identified one or more others who could not have participated in the crime; he had testified to the unlikely fact that he had a five minute period of identification; he had given descriptions of the three men which did not clearly include a description of the defendant; and his original identification of defendant was six or seven months after the event. Further, the state had endorsed but not called Ford as a witness, although he was the only known and available eye-witness for the purpose of identification[1]. On this analysis the decision to call Ford was not the equivalent of admissions by counsel that defendant was guilty of the crime. For this reason the decision in *Wiley v. Sowders*, 647 F.2d 642 (6th Cir.1981) is inapposite. The decision to call Ford and Faraby Lombardo did not abdicate defendant's position. It offered an alternative defense. "There are countless ways to provide effective assistance of counsel in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 104 S.Ct. at 2066.

On either analysis we conclude that the decision to call Ford as a witness was a calculated risk but did not constitute unreasonable professional judgment. *Strickland*, 104 S.Ct. at 2066. This is true even if defense counsel did not discuss the strategy with defendant. Because of the conclusion we reach that the decision to call Ford was reasonable trial strategy it is unnecessary for us to decide whether the movant has shown that prejudice has resulted. Movant's first point is denied.

■ Movant's second point claims ineffective assistance of counsel because he called a witness in sur-rebuttal. The witness was an investigator employed by de-

---

1. We conclude from the state's closing argument that a decision not to call Ford was based upon Ford's assertion of mistreatment by law enforce- ment authorities during the two day period of interrogation which included a threat previously mentioned.

fense counsel. During cross-examination of the defendant the state attempted to prove that the defendant had recently fabricated a story to account for his cash assets as an alternative to the inference that he stole the money during the murder-robbery. Defendant said that he stole the money from an automobile. No police report of the theft could be found. The investigator testified that he attempted to find but could not find any evidence that a theft from an automobile had been reported to law enforcement authorities in the area identified. The brief testimony of the investigator was offered to counter the suggestion that the evidence of the defendant with regard to the theft was a recent fabrication. The investigation was requested and occurred early in the preparation of the defense. It also had the tendency to suggest that the story was not true. However, the decision to present the testimony was supported by a rational basis and constituted trial strategy which could have benefited movant. Movant's second point is denied. *Van Smith v. State*, 716 S.W.2d 467 (Mo.App.1986).

■ Movant's third contention of ineffective assistance of counsel alleged that defense counsel failed to make a basic reasonable investigation to verify movant's whereabouts the day of the offense. Our study of the record indicates that prior to trial, movant told counsel different stories about his whereabouts on the day of the crimes. The matters not investigated would have been immaterial because, at best, they would have related to activities after 11:00 a.m. on the day in question and would not have been exculpatory. The credible evidence before the motion court supports the finding that movant did not inform his attorneys about the alleged activities which he now claims were not adequately investigated until the time of trial. Even if fully investigated, movant's belated contention would have not benefited the defense. "[A]ll that is required is investigation that is adequate under the circumstances of each particular case." *Barton v. State*, 586 S.W.2d 819, 821 (Mo.App. 1979). The murders in this case occurred

prior to 7:30 a.m. Movant's claim of matters not investigated relate to events that occurred between 11:30 a.m. and 1:30 p.m. Any failure to investigate on these matters does not tend to prove either ineffective assistance of counsel or prejudice.

■ Movant's final contention relies on plain error review of a denial of constitutional rights to a fair and impartial jury. Specifically, movant claims that he is a black man and the state used its peremptory challenges to exclude four black veniremembers. Movant relies on the decision of the United States Supreme Court in *Batson v. Kentucky*, —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson,* the court altered the previously announced standard which required a defendant to prove purposeful discrimination as a pattern in "case after case" as declared in *Swain v. Alabama,* 380 U.S. 202, 203, 85 S.Ct. 824, 826, 13 L.Ed.2d 759 (1965). The full answer to this contention is that movant's direct appeal was decided before *Batson v. Kentucky.* In *Allen v. Hardy,* —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed 2d 199 (1986), the Supreme Court held, "our decision in *Batson* should not be applied retroactively on collateral review of convictions that became final before our opinion was announced.... 'By final we mean the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in *Batson v. Kentucky*'". *Allen v. Hardy,* —— U.S. ——, 106 S.Ct. 2878, 92 L.Ed 2d 199 (1986). For purposes of movant's trial, *Swain* controls and not *Batson.* Furthermore, we have studied the trial court record and find no sufficient evidence to support a belief that racial prejudice was a decisive factor in the jury selected on process.

Judgment is affirmed.

PUDLOWSKI, P.J., and CRANDALL, J., concur.