Maurice Oscar BYRD, Appellant,

v.

Paul DELO, Superintendent, State Correctional Facility at Potosi, and Attorney General of the State of Missouri, Appellees.

No. 90–1491.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 8, 1991.

Decided Aug. 14, 1991.

Rehearing Denied Aug. 21, 1991.

Concurring opinion Aug. 21, 1991, as amended Aug. 23, 1991.

Burton H. Shostak, argued (Deborah J. Kerns and Theodore A. Zimmermann, on brief), St. Louis, Mo., for appellant.

Stephen D. Hawke, Jefferson City, Mo., for appellee.

Before McMILLIAN, ARNOLD and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

In this death-penalty case from Missouri, we have before us what is in effect a third petition for habeas corpus. Petitioner, Maurice Oscar Byrd, claims that a legal development occurring after the dismissal of his second petition opens up some of his federal constitutional claims for review on the merits. The legal development in question is an order of the Supreme Court of Missouri, denying, without comment, Byrd's original petition for habeas corpus under Mo.Sup.Ct.R. 91, an order that the Missouri Supreme Court later clarified by stating that its action had been based solely on state procedural grounds. Believing that Byrd's reliance on this new development was a nonfrivolous theory with the arguable effect of clearing away procedural barriers to federal habeas relief, we stayed his execution, set a briefing schedule, stayed the issuance of our mandate following our affirmance of the dismissal of his second habeas petition, and heard oral argument.

In the meantime, the Supreme Court has decided *Coleman v. Thompson,* —— U.S. ——, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), and *Ylst v. Nunnemaker,* —— U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

■ Petitioner argues that two federal claims are now open for review on the merits. First, he claims that his jury was instructed that it could not consider any mitigating circumstance unless it first found unanimously the existence of that circumstance. This instruction, we are told, violates the Eighth Amendment, as incorporated against the states by the Due Process Clause of the Fourteenth Amendment, and as interpreted by the Supreme Court in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). For reasons to be detailed in this opinion, we reject this claim. Petitioner's *Mills* argument was not raised in his first habeas petition. There was no good reason for this omission. Therefore, to entertain this claim on its merits now would be an abuse of the writ. See *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). The abuse-of-the-writ doctrine focuses not on what occurred in the state courts, but on what occurred (or did not occur) in a previous federal habeas petition. Accordingly, whatever the legal effect of the Missouri Supreme Court's handling of Byrd's recent petition under Rule 91, analysis of the *Mills* claim is unaffected. It was an abusive claim at the time of our dismissal of the second habeas petition, and it is still an abusive claim.

■ Byrd's second argument has to do with the selection of his trial jury. He claims that the prosecuting attorney exercised peremptory challenges on the basis of race, and did so consistently in case after case, thus violating the Equal Protection Clause of the Fourteenth Amendment as interpreted by the Supreme Court in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). After analyzing the history of this claim, we conclude that its previous rejection was based on a procedural default occurring in the state courts. Accordingly, as to the *Swain* claim, it is necessary to address Byrd's contention that the Missouri Supreme Court's recent orders remove any state procedural bar. Having considered this argument in light of the Supreme Court's recent rulings in *Coleman* and *Ylst,* we hold that it cannot withstand analysis. The state procedural bar previously identified as an obstacle to the *Swain* claim remains undisturbed. This claim, too, must be once again rejected.

The stay of execution previously entered must be dissolved. We direct that our mandate issue forthwith. A further stay of execution, if one is granted, must come from this Court en banc, the Supreme Court, or a justice thereof.

I.

In order to put the legal arguments in context, we recount as briefly as possible the relevant aspects of the procedural history of this case. Byrd's first petition for habeas relief was denied by the District Court, and this Court affirmed. *Byrd v. Armontrout,* 686 F.Supp. 743 (E.D.Mo. 1988), *aff'd,* 880 F.2d 1 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). He then filed, as a separate proceeding, a second federal habeas corpus petition. The District Court denied this petition. *Byrd v. Delo,* 733 F.Supp. 1334 (E.D.Mo.1990). We affirmed. 917 F.2d 1037 (8th Cir.1990). In our affirming opinion, nine separate claims were examined, three of them repetitive (that is, claims that had already been considered and rejected in the first habeas proceeding), and six of them new (that is, claims that had not been raised in the first federal habeas proceeding).

At the end of our opinion, we addressed a point made by Byrd with respect to the possible availability of an additional state remedy. Byrd said he had not yet filed a state habeas petition under Mo.Sup.Ct.R. 91, and asked us to continue his stay of execution until such a petition could be filed and disposed of. We denied this request. The Missouri courts, we said, should be the ones to decide whether the execution should be stayed pending determination of a Rule 91 petition.

Counsel for Byrd, showing their customary diligence and alertness, promptly filed an original habeas corpus petition with the Supreme Court of Missouri under Rule 91. The Missouri Supreme Court denied the

petition on the same day that it was filed, October 23, 1990. The Supreme Court's order read as follows:

> Now at this day, on consideration of the petition for writ of habeas corpus herein to the said respondent, it is ordered by the court here that the said petition be, and the same is hereby denied.

Byrd then returned to us. He invoked the "plain statement" rule of *Harris v. Reed*, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). The Missouri Supreme Court's order, he argued, did not contain a plain statement demonstrating that its rejection of Byrd's petition was based on state procedural grounds. Accordingly, under *Harris*, it should be assumed that the state court had reviewed and rejected Byrd's federal claims (contained in the Rule 91 petition) on their merits. This action by the state court, Byrd argued, opened up the merits of these same claims for federal habeas review. On October 26, 1990, we granted Byrd's motion for stay of execution and stay of our mandate. We did so in the belief that his *Harris v. Reed* theory was substantial enough to deserve careful examination.

Three days later, the State filed with the Missouri Supreme Court a "Motion for Modification of Order," asking the Court to change its previous order to demonstrate that it had been based on procedural grounds, and not on the merits. Before Byrd could file an opposition to this motion, the Missouri Supreme Court granted it. It entered the following order on October 29, 1990:

> The order of this Court entered on October 23, 1990, denying the petition for writ of habeas corpus is vacated and in lieu thereof the following order is entered this date: The petition discloses no ground for relief that could not have been asserted either in the initial appeal or in the 27.26 motion, both of which have been finally determined, or [are] otherwise procedurally barred. The petition is denied. All further claims for relief in the courts of Missouri are procedurally barred.

The State then asked us to vacate our stay of execution. The Missouri Court's order of October 29, it said, exploded petitioner's theory. The order demonstrated that the Supreme Court's rejection of petitioner's new Rule 91 petition was not based on the merits, but rather solely on the state-law procedural ground that Rule 91 is not available to litigate issues that could have been asserted earlier, either on direct appeal or in a state post-conviction proceeding filed in a trial court. We denied the State's motion on the next day, October 30. The circumstances surrounding the Missouri Supreme Court's second order—including the fact that it had been entered within a matter of hours, without allowing Byrd to file a response—convinced us that petitioner's *Harris v. Reed* theory remained substantial enough to prevent the carrying out of the death sentence until we could thoughtfully examine it. This Court en banc, the Circuit Justice, and the Supreme Court of the United States all denied motions by the State to vacate our stay. A briefing schedule was then set, and an oral argument held.

II.

Technically, we are still dealing with petitioner's second habeas petition. This is the petition whose dismissal we affirmed on October 19, 1990. Thereafter, for reasons that have been described, we stayed the issuance of our mandate, stayed petitioner's execution, and proceeded to consider his claims in the ordinary course. In form, therefore, the action we take today consists simply of dissolving the previous stay of mandate, dissolving also the stay of execution, and allowing the case to proceed further, either to the Court en banc or to the Supreme Court of the United States. In substance, though, as in *Simmons v. Lockhart*, 915 F.2d 372 (8th Cir.1990), we are considering a third federal habeas petition. Byrd claims that legal developments occurring after the dismissal of his second petition have opened up the merits of some at least of his federal constitutional attacks on his sentence and conviction. In our order of October 29, 1990, we identified two claims that we believed deserving of

consideration under this new theory: the arguments described above as the *Mills* and *Swain* claims. Byrd's supplemental brief argues these two claims, and we now proceed to discuss them.

### A.

■ On reflection, the *Mills* claim is easily disposed of. This is a new claim, and was identified as such in our 1990 opinion addressing the second habeas petition. The *Mills* claim was not raised in the first habeas petition. The District Court, considering the second habeas, rejected the claim as abusive and as without merit. In his second petition, Byrd argued that the "actual innocence" exception should excuse his failing to raise the *Mills* issue in his first federal habeas petition. We rejected this argument, holding that "Byrd would have been sentenced to death even if the jury had been instructed" in accordance with his *Mills* contention. *Byrd v. Delo*, 917 F.2d at 1047.

This ground of rejection is unaffected by the Missouri Supreme Court's handling of the Rule 91 petition. The abuse-of-the-writ doctrine, setting out strict requirements for a federal court to entertain an argument omitted from a previous federal habeas petition, concentrates on the previous course of proceedings in the federal courts. It has nothing to do with questions of procedural default in the state courts, and those questions are the only ones even arguably affected by the course of the Rule 91 proceeding in the Supreme Court of Missouri. The abuse-of-the-writ ground which we relied on in our opinion on Byrd's second petition is just as good now as it was then. Accordingly, we again reject his *Mills* claim without reaching its merits.

### B.

Analysis of the *Swain* claim is more complicated. Our opinion on Byrd's second petition rejected the *Swain* claim because it had been raised and rejected in his first petition, and no good reason had been shown why the ends of justice would require or permit considering it in a second petition. This ground, like the one discussed above with respect to the *Mills* claim, concerns itself with the prior course of proceedings in federal court. Petitioner, however, takes us to another level of analysis. The *Swain* claim was rejected in the first habeas petition, he points out, for a combination of reasons. First, to the extent that the claim rested only on the record before the habeas court, it was without merit. This was not all there was to the claim at that time, however. Byrd also attempted to introduce new evidence purporting to show a consistent and unbroken habit of excluding black people from juries, the kind of evidence that would be sufficient under *Swain*. The District Court refused to entertain this evidence, ruling that it was procedurally barred by Byrd's failure to offer it in the state courts. Thus, if the recent action of the Supreme Court of Missouri in the Rule 91 case has the effect of removing a state procedural bar as to those claims (including the *Swain* claim) included in the Rule 91 petition, Byrd's argument that his *Swain* claim is now open for decision on its merits might have substance.

We must therefore analyze the effect of the Missouri Supreme Court's two orders, and, in doing so, take into account the recent opinions of the Supreme Court of the United States in *Coleman* and *Ylst*.

The latter case does not help much. The Court does remark that "[s]tate procedural bars are not immortal . . .; they may expire because of later actions by state courts." 111 S.Ct. at 2593. The action of a state court, in other words, in reaching the merits of a federal claim could remove a procedural bar in place because of previous state-court action. This is the kind of argument that Byrd is making here. In order to evaluate the argument, though, we must first determine whether the recent actions of the Supreme Court of Missouri in fact were based on its view of the merits of Byrd's federal claim. As to this question, *Ylst* is not in point. Some of the facts are similar, but the legal analysis is different. The petitioner in *Ylst* did claim that an order of the Supreme Court of California, entered without opinion, denying his peti-

tion for habeas corpus, had the effect of removing a state procedural bar. In *Ylst*, though, a previous reasoned state-court opinion had rested its rejection of petitioner's claim explicitly on state procedural grounds. In that situation, the Supreme Court has now held, the federal habeas court should "look[ ] through" the unexplained order denying habeas and presume that it represents no disposition to depart from the earlier, reasoned state-court opinion based on state procedural law. *Ylst*, 111 S.Ct. at 2595.

This technique is unavailable in the present case. We do not have a previous reasoned state-court opinion declining to entertain the new evidence petitioner now offers in support of his *Swain* theory, whether on state procedural grounds or otherwise. The fact is that petitioner has never attempted to present this new evidence to a state court. Our conclusion, expressed in our previous opinions in this case, that this claim is procedurally defaulted rests upon our reading of state procedural law. An attempt to offer new evidence in support of the *Swain* theory would not now be entertained, for at least two procedural reasons: the evidence should have been offered before trial in the state court, at a time when the venire could be effectively challenged; and, if that procedural ground could somehow be avoided, the evidence should have been offered in the state post-conviction proceeding under Rule 27.26. A second such proceeding would not now be entertained, there being no good reason why the evidence in question could not have been offered in the first such proceeding.

If *Ylst* is no help, however, *Coleman* furnishes direct guidance. Like the petitioner in *Coleman*, Byrd rests his case essentially on one passage in the Supreme Court's opinion in *Harris v. Reed, supra.* That passage reads as follows: "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." 489 U.S. at 263, 109 S.Ct. at 1043 (internal quotations omitted). (We assume for present purposes that the Missouri Supreme Court's order denying Rule 91 relief is a "judgment" as that term is used in this passage in the *Harris* opinion. The State argues that it is not a "judgment," but only a discretionary denial of relief. *Cf. Ylst*, 111 S.Ct. at 2594 n. 2.) At the time we entered our stay of execution last October, we also focused on that passage in *Harris*.

The Supreme Court has now explained that the passage in question should not be read in isolation. The *Coleman* opinion lays down the following as the true statement of the rule in *Harris:*

> After *Harris*, federal courts on habeas corpus review of state prisoner claims, like this Court on direct review of state court judgments, will presume that there is no independent and adequate state ground for a state court decision when the decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." [*Michigan v.*] *Long, supra,* [463 U.S. 1032] at 1040–1041 [103 S.Ct. 3469 at 3476–3477, 77 L.Ed.2d 1201 (1983)]. In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.

111 S.Ct. at 2557 (footnote omitted).

Byrd cannot meet this test. The order of the Supreme Court of Missouri, entered on October 26, 1990, denying his Rule 91 habeas petition is simply silent as to the underlying grounds and reasons. It does not "fairly appear[ ] to rest primarily on federal law, or to be interwoven with the federal law...." The *Harris* presumption that federal law was the basis of a state court's decision is therefore inapplicable. We must evaluate the effect of the Missouri Supreme Court's order without the aid of this presumption. When the question is

phrased that way, we think the answer is plain. The Missouri Supreme Court rejected the Rule 91 petition on the same day it was filed. This indicates that the ground of rejection was not an examination of the merits of the petition, which surely would have taken more time, but rather the application of a procedural rule believed by the Missouri Supreme Court to be plain and obvious: that Rule 91 cannot be used as a vehicle for raising questions that could have been raised on direct appeal or in a Rule 27.26 proceeding, filed initially in a state trial court.

■ Petitioner argues that this state-law ground, if it was indeed the reason for the Missouri Supreme Court's action, cannot qualify as independent and adequate, because the Missouri Supreme Court, in previous actions on Rule 91 petitions, has not applied the asserted procedural rule regularly and consistently. We reject this argument. Petitioner cites no case, and we know of none, where the Missouri Supreme Court, acting on a Rule 91 petition, either granted relief or denied relief on its merits, as to claims that could have been raised earlier on direct appeal or under Rule 27.-26. All of the Rule 91 orders, in cases involving convicted prisoners, of which we are aware are either unexplained denials, or, in the very recent past, denials accompanied by a summary statement that they are based on state procedural law. After *Coleman*, there is simply no reason to construe an unexplained Rule 91 denial as opening up the merits of a previously defaulted federal issue.

If there were any doubt, it would be removed by the Missouri Supreme Court's subsequent order, entered on the motion of the State, explicitly referring to state procedural grounds. Petitioner complains that the order was entered in haste, with the Court not even giving him a full day within which to file an opposition. He intimates that the Missouri Supreme Court's only purpose was to expedite his death, and that its second order was entered only because this Court, believing that uncertainty had been injected by the first order, had stayed the execution. Byrd also claims that under

state law, the second order was void, that Missouri state courts have no power to enter *nunc pro tunc* orders altering the legal effect of an order already entered. We have carefully considered these arguments, but ultimately we find them unavailing. The second order did no more than explain the Court's reasons for the first order. Certainly no one knows better than the Missouri Supreme Court itself why it rejected the Rule 91 petition. Obviously the Court did not feel it was necessary to hear from petitioner on this point. The Court, apparently, knew what it had meant and did not need one of the parties to the case to help it in expressing its own previously undisclosed intent. As to the argument that the second order was void under state law, we observe only that, for our purposes, "state law" is what the Supreme Court of Missouri says it is. Its entry of the second order is an implicit holding that it had power so to act. We decline to question the motives of the Supreme Court of Missouri. Its members, like us, are sworn to uphold the federal Constitution. We have no doubt that, like us, they attempt to do so to the best of their abilities and understanding.

### III.

We have carefully examined Byrd's claims. We have reflected upon them with the attention appropriate to what is at stake here: a human life. We are persuaded that the law obliges us to reject his arguments.

Our order of October 26, 1990, staying issuance of our mandate and staying the execution of the sentence of death, is vacated. The stay of execution is dissolved. We direct that our mandate issue forthwith.

### ORDER DENYING MOTION FOR STAY OF EXECUTION AND PETITION FOR REHEARING WITH SUGGESTION FOR REHEARING EN BANC

The petition for rehearing by the panel is denied. The motion to the court en banc for stay of execution and the suggestion for rehearing en banc is denied by reason

of a lack of majority of active judges voting to rehear the case en banc. Chief Judge Lay and Judge Wollman dissent from the denial of the stay and the denial of the suggestion for rehearing en banc.

Statement of LAY, Chief Judge, with whom WOLLMAN, Circuit Judge, joins.

I vote to grant the rehearing en banc and to grant the stay of execution until such time as the court en banc can consider the possible conflict with decisions of this court and to evaluate the important constitutional claims involved in this death case. One of the claims petitioner has asserted is that at the time of his trial the prosecutor systematically excluded blacks from the jury. This claim has never been considered due to the procedural bar doctrine even though Byrd has raised this claim in every post-conviction proceeding in state or federal court. Within the procedural bar doctrine is an "ends of justice" exception as spelled out in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986). In failing to pass upon this question, our court remains in conflict with *Pilchak v. Camper*, 935 F.2d 145 (8th Cir.1991).

Byrd has presented this court with seven affidavits from criminal defense lawyers practicing in St. Louis. The affiants attest that the St. Louis prosecutor engaged in a systematic effort to use peremptory challenges to eliminate all blacks from juries in criminal cases. This appears to establish a prima facie due process violation under *Swain v. Alabama*, 380 U.S. 202, 222–24, 85 S.Ct. 824, 838–39, 13 L.Ed.2d 759 (1965). The panel refused to consider the affidavits, finding the claim procedurally barred.

Byrd first raised a jury selection issue on appeal of the denial of state collateral relief before the Missouri Court of Appeals. *Byrd v. State*, 723 S.W.2d 37, 42 (Mo.Ct. App.1986), *cert. denied*, 484 U.S. 872, 108 S.Ct. 203, 98 L.Ed.2d 155 (1987). He relied on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), but the court found Byrd could not avail himself of *Batson* because the case came down after Byrd's conviction was final and is not applied retroactively. *See Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986). The Missouri court then added: "Furthermore, we have studied the trial court record and find no [sic] sufficient evidence to support a belief that racial prejudice was a decisive factor in the jury selected on [sic] process." 723 S.W.2d at 42.

Finding his *Batson* claim denied, Byrd attempted to bring a case under *Swain* in the federal habeas court. *Swain* was the law at the time of Byrd's conviction, and required evidence of systematic exclusion of blacks from jury panels over a period of time and in a series of cases. Byrd requested discovery on the *Swain* claim but was denied because he did not raise *Swain* in the state courts. *Byrd v. Armontrout*, 686 F.Supp. 743 (E.D.Mo.1988), *aff'd*, 880 F.2d 1, 7 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990). Byrd argued he had cause to rely on *Batson* because the Supreme Court had not yet decided that *Batson* would not be applied retroactively. The panel denied his discovery request and denied his *Swain* claim on the merits. Absent the opportunity for discovery Byrd had no evidence to support that claim. *Id.*

On a second habeas petition Byrd reiterated his *Swain* claim and was denied. On rehearing, the panel noted that the Missouri Supreme Court had denied Byrd's most recent appeal without making a plain statement that the denial was on procedural grounds. *Byrd v. Delo*, 917 F.2d 1037, 1048–49 (8th Cir.1990). The court concluded that the procedural bar had thus been removed and the *Swain* claim revived. However, the Missouri Supreme Court subsequently entered an order clarifying that it previously ruled on state procedural grounds. This order, along with a finding that Byrd never did in fact bring his *Swain* claim before the state courts, caused the panel to vacate its stay and brings the matter before the court en banc.

*Analysis*

This court recently applied the ends of justice exception in an analogous situation

in *Pilchak v. Camper,* 935 F.2d 145 (8th Cir.1991) (Beam, J.). The petitioner in that case proved that her jury had been unconstitutionally selected when the Sheriff hand-picked the jurors for her case. Petitioner defaulted on this claim but this court held that applying the procedural bar would be unjust. The court stated that "[t]here are times ... that justice requires a more expansive and compassionate application of the rules." *Id.* at 148.

Byrd has made a prima facie case of racial discrimination in the selection of his jury. His evidence that the county prosecutor systematically excluded blacks from juries is indistinguishable from that of the Sheriff hand-picking jurors in *Pilchak.* Although this court often finds that procedurally barred claims are non-meritorious anyway, it is a rare case when the court knowingly refuses to consider a meritorious claim.

This is not a clear-cut case of procedural bar. Byrd has raised a jury-selection claim in each habeas petition and before the state courts. There is some confusion as to whether the claim was brought under *Batson* or *Swain,* but the principle behind procedural bar—that the state should have opportunity to pass on the claim and that petitioners should bring forward all their claims initially—that principle has been met here.

The Supreme Court has stated that "discrimination on account of race in the administration of justice strikes at the core concerns of the Fourteenth Amendment and at fundamental values of our society and legal system." *Rose v. Mitchell,* 443 U.S. 545, 564, 99 S.Ct. 2993, 3004, 61 L.Ed.2d 739 (1979). "The risk of racial prejudice infecting a capital sentencing proceeding is especially serious in light of the complete finality of the death sentence." *Turner v. Murray,* 476 U.S. 28, 35, 106 S.Ct. 1683, 1688, 90 L.Ed.2d 27 (1986) (White, J.).

Particularly in a capital proceeding, with an execution imminent, this court is obligated to consider whether execution of the petitioner will constitute a miscarriage of justice. That analysis has not been presented in any written opinion of the state or federal courts. In light of the prima facie case and the vulnerability of the jury system to bias and prejudice, this court en banc should grant at least a stay to consider the *Swain* issue and ensure that a miscarriage of justice does not take place this Friday, August 23, 1991.

## ON MOTION FOR STAY OF EXECUTION

ARNOLD, Circuit Judge, joined by BEAM, Circuit Judge, concurring.

I concur in the denial of the motion for stay of execution, as well as the suggestion for rehearing en banc. As the author of the most recent panel opinion, I desire to add a few words of explanation in view of the points made by the dissent.

The dissenting opinion's principal reliance is on the contention that the panel opinion in the present case is in conflict with *Pilchak v. Camper,* 935 F.2d 145 (8th Cir.1991). In my view, *Pilchak* is distinguishable. There, the panel held, on the facts of the record before it, that the constitutional errors claimed had led to the imposition of a sentence (life without parole) that would not otherwise have been imposed on the petitioner. This is an entirely reasonable variation on the factual-innocence exception to the normal rules of procedural bar. The record in the present case does not support such an argument. In fact, the main point made in the motion for stay of execution is that the existence of a *Swain* violation, in and of itself, renders a conviction fundamentally unjust and therefore eligible for an exception to the normal procedural-bar doctrine. This argument is squarely contrary to controlling Supreme Court precedent. The Supreme Court focuses on probable factual innocence, not the mere existence of a constitutional violation.

It is also worth noting that in *Pilchak* there were multiple constitutional violations. Not only did the Sheriff's office hand pick the jury, but defendant's counsel was suffering from Alzheimer's disease, which, the panel found, caused him to make

the improvident decision to call Pilchak as a witness, thus opening the floodgates to extremely damaging rebuttal evidence.

For these reasons, I cannot agree that any supposed conflict with *Pilchak* supports either a stay of execution or a rehearing en banc.